STEWART TITLE GUARANTY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19567.   Promulgated October 31, 1950.

*Albert J. DeLange, Esq.,* and *Sam W. Mintz, Esq.,* for the petitioner.
*F. S. Gettle, Esq.,* for the respondent.

568

570

OPINION.

ARUNDELL, *Judge:* The deficiencies in tax which have been determined by the respondent and assessed against New Southwestern are not here in issue, the sole question being whether the petitioner is liable therefor as a transferee.

The respondent contends that the transaction in question should be characterized in one of two ways: as one in which the petitioner purchased all of the stock and thereafter dissolved New Southwestern, or, in the alternative, as one in which the petitioner purchased the abstract

and title plant under the option provided for in the lease agreement and by paying the purchase price of $40,000 to Wakefield rather than to the corporation rendered the corporation insolvent and incapable of satisfying the claims of its creditors, including the tax liability due the respondent.

The record clearly does not support the respondent's suggestion that the transaction was one whereby petitioner acquired the stock of New Southwestern and thereafter directed its dissolution. The option demanded by and granted to petitioner in the lease of October 20, 1938, pertained solely to certain specified physical assets in the abstract and title plant. The minutes of the meeting at which the directors of petitioner ratified the exercise of the option and the minutes of the meeting of the stockholders of New Southwestern at which the sale was approved disclosed no intention on the part of either party to purchase or sell anything more than the abstract and title plant covered by the option. The bill of sale and the receipt executed on February 15, 1945, also states that the property conveyed to the petitioner consisted of the abstract and title plant of New Southwestern.

Although various corporate records of Old Southwestern and New Southwestern were delivered to petitioner by Wakefield in connection with the transaction, such records, including the stock certificates in New Southwestern, were returned by petitioner to New Southwestern's accountant after photostats had been made for its files. The tax returns of New Southwestern for the year ending April 30, 1945, represented that Wakefield was the owner of 100 per cent of its stock and reported the gain from the sale of the assets in question to the petitioner. The certificate of dissolution likewise showed full stock ownership in W. A. Wakefield.

Respondent would have us regard the interest of the petitioner in the whereabouts of the stock of Old Southwestern and New Southwestern at the time it exercised the option and actually concluded the transaction on February 15, 1945, as evidence that the stock rather than the abstract and title plant was the subject of the sale. However, this interest was in our opinion based on sound business reasons. After exercising the option, petitioner learned that Wakefield had pledged his stock in Old Southwestern with creditors as collateral for debts which at the time of the transaction had not been paid. It had no knowledge of the status of the other shares of stock in Old Southwestern and, therefore, was concerned with the validity of the transfer of the assets and liabilities of Old Southwestern upon its dissolution in 1941 to New Southwestern. Moreover, as the abstract and title plant constituted the principal asset of New Southwestern and its sale would serve to put the corporation out of business, it was important that the consent of all stockholders be secured in order to block any later attempt by a minority stockholder to set aside the sale.

However, the most damaging circumstance to the respondent's case is that while he maintains that petitioner purchased the stock rather than the assets of New Southwestern, the deficiencies he has determined for the fiscal year ending April 30, 1945, stem almost entirely from the gain realized by New Southwestern from the sale of the abstract and title plant to petitioner. The inconsistency of this position is obvious.

For the reasons stated above, we have concluded that the petitioner purchased the abstract and title plant from New Southwestern and in no way negotiated for or actually purchased any stock in either Old Southwestern or New Southwestern in the transaction of February 15, 1945.

Nor do we think that the respondent's contention that the result of the transaction in question was to render New Southwestern insolvent as to its creditors is well taken. It is true that the payment of the purchase price of $40,000 was made by checks drawn and issued in the name of W. A. Wakefield, but the facts show that at the time of the transaction Wakefield was the president and the sole stockholder of New Southwestern and the receipt he executed shows that he accepted payment on behalf of and in the name of the corporation and signed the receipt as the president of New Southwestern.

The purchase price of $40,000 was deposited in an account entitled "W. A. Wakefield, Trustee". However, it is clear that no account existed in the name of New Southwestern at the time of the transaction and it is doubtful whether a bank account had ever been maintained in the name of New Southwestern. We find not the slightest inference in the facts of this case to indicate that Wakefield intended to or did in fact defeat the claims of corporate creditors by so depositing the proceeds of the sale of the abstract plant.

On February 15, 1945, checks representing rental payments totaling $6,411.98 were issued by petitioner in the name of New Southwestern which were endorsed by Wakefield as president of New Southwestern, and individually, and deposited in the "W. A. Wakefield, Trustee" account. Another check was drawn on February 16, 1946, by petitioner to the order of New Southwestern in the amount of $991.14 which Wakefield endorsed as president, cashed, and deposited in the same account. Therefore, within a period of approximately one year after the transaction in question, checks were issued to New Southwestern by petitioner in the name of New Southwestern in amounts exceeding the total tax liability determined by the respondent.

Furthermore, Wakefield testified that New Southwestern had no liabilities at the time of the sale of the abstract plant to petitioner on February 15, 1945. No liabilities other than for its capital stock were

disclosed in the balance sheet attached to the income tax return of New Southwestern for the year ended April 30, 1945.

Respondent relies upon the rule that where one dispossesses a company of all its assets, pays the consideration therefor to a third party, and leaves the propertyless corporation unable to pay its debts, one becomes a trustee and is liable for the taxes and other debts of the corporation to the extent of the value of the property taken. *Gideon-Anderson Co.*, 20 B. T. A. 106; *Woodley Petroleum Co.*, 16 B. T. A. 253; *Shepard* v. *Commissioner*, 101 Fed. (2d) 595, certiorari denied, 307 U. S. 639. However, those same cases recognize the rule that where one corporation in good faith purchases or acquires all of the assets of another for fair consideration, the transferee is not liable for the debts and liabilities of the transferor. *Gideon-Anderson Co.*, *supra*. In our opinion, the facts in the instant case call for the application of the latter rule.

Petitioner paid New Southwestern fair consideration in the amount of $40,000 for an abstract and title plant with an agreed value of $30,000 and the respondent has not sustained his burden of proving that Wakefield was not authorized to or did not in fact accept payment on behalf of New Southwestern or that New Southwestern was rendered insolvent as to its creditors by reason of the sale. Therefore,

*Decision will be entered for the petitioner.*